# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

------------------------------------

**THOMAS E. PEREZ**, Secretary of Labor, :
United States Department of Labor, :
:
                Plaintiff, :
: File No.:
      v. :
:
:
**THOMAS E. LEITER; THE LEITER** :
**GROUP ATTORNEYS AND** :
**COUNSELORS PROFESSIONAL** :
**CORPORATION;** and :
**THE LEITER GROUP PENSION PLAN,** :
:
                Defendants. :

------------------------------------

## COMPLAINT

Plaintiff Thomas E. Perez, Secretary of Labor, United States Department of Labor (the "Secretary"), alleges as follows:

1.      This action arises under Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1001, et seq., and is brought by the Secretary under ERISA §502(a)(2) and (5), 29 U.S.C. §1132(a)(2) and (5), to enjoin acts and practices which violate the provisions of Title I of ERISA, to obtain appropriate equitable relief for breaches of fiduciary duty under ERISA §409, 29 U.S.C. §1109, and to obtain such further equitable relief as may be appropriate to redress and to enforce the provisions of Title I of ERISA.

2. This court has jurisdiction over this action pursuant to ERISA §502(e)(1), 29 U.S.C. §1132(e)(1).

3. The Leiter Group Pension Plan (the "Plan") is an employee benefit plan within the meaning of ERISA §3(3), 29 U.S.C. §1002(3), which is subject to the provisions of Title I of ERISA pursuant to ERISA §4(a), 29 U.S.C. §1003(a).

4. Venue of this action lies in the Central District of Illinois pursuant to ERISA §502(e)(2), 29 U.S.C. §1132(e)(2), because the Plan is administered in Peoria, Peoria County, Illinois, within this district.

## DEFENDANTS

5.. The Plan is named as a defendant herein pursuant to Federal Rule of Civil Procedure 19(a) solely to assure that complete relief can be granted.

6. From at least April 1, 2002 through the present, Defendant The Leiter Group Attorneys and Counselors Professional Corporation ("Leiter Group"), was the sponsor of the Plan; the Plan Administrator; a fiduciary of the Plan within the meaning of ERISA §3(21)(A), 29 U.S.C. §1002(21)(A); and a party in interest to the Plan within the meaning of ERISA §3(14)(A) and (C), 29 U.S.C. §1002(14)(A) and (C).

7. From at least April 1, 2002 through the present, defendant Thomas E. Leiter ("Leiter"), was the sole owner and officer of the Leiter Group; the sole trustee of the Plan; a fiduciary of the Plan within the meaning of ERISA §3(21)(A), 29 U.S.C. §1002(21)(A); and a party in interest to the Plan within the meaning of ERISA §3(14)(A), (E), and (H), 29 U.S.C. §1002(14)(A), (E), and (H).

**PARTIES IN INTEREST**

8. From at least January 1, 2010 through the present, Leiter held the sole beneficial interest in both the Apollo Trust ("Apollo Trust") and the Main-Flora Trust ("Main-Flora Trust") (collectively the "Trusts"), and was also the sole trustee of these entities. Accordingly, each of these trusts were a party in interest to the Plan as defined in ERISA § 3(14)(G).

9. From at least April 1, 2002 through the present, Leiter was the managing member and president of Beacon Properties, LLC ("Beacon") and held a 100 percent interest in this entity under the terms of its operating agreement. Beacon was a limited liability company engaged in the ownership, development, and sale of real estate. Accordingly, Beacon was a party in interest to the Plan as defined in ERISA § 3(14)(G).

10. From at least April 1, 2002 through the present, Beacon owned a 50 percent interest in Hacienda Del Mar, LLC ("HDM") and Leiter was HDM's president and managing member. HDM was a limited liability company engaged in a condominium development. As an entity 50 percent owned by Beacon—and therefore 50 percent indirectly owned by Leiter, HDM was a party in interest to the Plan as defined in ERISA § 3(14)(G).

**COUNT ONE**
**(Loans to Trusts)**

11. Paragraphs 1 through 8 above, are realleged and incorporated herein by reference.

12. On January 10, 2010, Leiter, caused the Plan to make a $122,000 loan to the Apollo Trust. ("Apollo Loan"). Upon information and belief, the loan was intended to be made to the Main-Flora Trust, but due to a scrivener's error, it was made to the Apollo Trust.

13. On January 10, 2010, Leiter, on behalf of the Apollo Trust, executed a promissory note to the Plan. Pursuant to the promissory note the Plan loaned $122,000 of Plan assets to the Apollo Trust.

14.  Under the terms of the Apollo Loan, the Apollo Trust agreed to pay the principal and 4% annual interest to the Plan by January 10, 2013.

15.  On January 1, 2011, Leiter, caused the Plan to enter into a $119,880 loan agreement with the Main-Flora Trust ("MFT Loan 1").  The note was for $119,880. Upon information and belief, this loan agreement was executed to correct the scrivener's error and was a renegotiation of the original terms of the Apollo Loan.

16.  On January 1, 2011, Leiter, on behalf of the Main-Flora Trust, executed a promissory note to the Plan for $119,880, the unpaid principal amount from the Apollo Loan. The MFT Loan 1 was secured by a collateral assignment of benefit made to the Plan.

17.  Under the terms of the MFT Loan 1, the Main-Flora Trust agreed to pay the principal and 4% annual interest to the Plan by January 1, 2014.

18.  The Plan never received any payment of principal or interest from the MFT Loan 1 from the Main-Flora Trust.

19.  On January 1, 2014, Leiter, on behalf of the Main-Flora Trust, executed a new promissory note to the Plan for $134,265, representing the unpaid principal amount and interest from the MFT Loan 1 ("MFT Loan 2"). The MFT Loan 2 was unsecured.

20.  Under the terms of the MFT Loan 2, the Main-Flora Trust agreed to make an annual 4% interest payment and an annual $5,000 principal payment to the Plan. The Main-Flora Trust would pay the remaining amount due by January 1, 2017.

21.  From January 1, 2014 to the present the Plan received no annual interest or principal payment on the MFT Loan 2.

22.  With the exception of the MFT 1 Loan, none of the notes were secured.  Also none of the promissory notes received by the Plan contained an amortization schedule.

23. Leiter never demanded any payment of principal or interest for the Apollo Loan, the MFT Loan 1, or the MFT Loan 2.

24. Based on the facts set forth in paragraphs 11 through 23 above, defendant Leiter:

a. failed to act solely in the interest of the participants and beneficiaries of the Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of the Plan's administration, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

b. failed to discharge his duties with the requisite care, skill, prudence, and diligence, in violation of ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B);

c. caused the Plan to engage in transactions which he knew or should have known constituted a direct or indirect lending of money or other extension of credit between the Plan and a party in interest, in violation of ERISA §406(a)(1)(B), 29 U.S.C. §1106(a)(1)(B);

d. caused the Plan to engage in transactions which he knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the Plan, in violation of ERISA §406(a)(1)(D), 29 U.S.C. §1106(a)(1)(D);

e. dealt with assets of the Plan in his own interest in violation of ERISA §406(b)(1), 29 U.S.C. §1106(b)(1); and

f. acted on behalf of a party whose interests are adverse to the interests of the Plan or the interests of their participants and beneficiaries, in violation of ERISA §406(b)(2), 29 U.S.C. §1106(b)(2).

25. Pursuant to the Plan document the Leiter Group, as the Plan Administrator, was obligated to monitor Leiter, the Plan trustee's, performance. In failing to monitor Leiter's performance the Leiter Group failed to act solely in the interest of the participants and

beneficiaries of the Plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of the Plan's administration when it allowed Leiter to engage in the activities set forth in paragraphs 11 through 23 above, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A).

26. Defendant the Leiter Group is individually liable, pursuant to ERISA §405(a)(2); 29 U.S.C. §1105(a)(2), for the breaches of fiduciary responsibility by co-fiduciaries, as described in paragraphs 11 through 24 above, because by failing to comply with ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A) in the administration of its specific responsibilities which gave rise to its individual status as a fiduciary of the Plan, it enabled its co-fiduciary to commit the ERISA violations described in paragraphs 24.

27. As a direct and proximate result of Defendants Leiter and the Leiter Group's fiduciary breaches, the Plan suffered injury and losses for which they are personally liable and are subject to appropriate equitable relief, pursuant to ERISA §409, 29 U.S.C. §1109.

## COUNT TWO
### (Loans to Beacon)

28. Paragraphs 1 through 7 and 9 above, are realleged and incorporated herein by reference.

29. On December 31, 2007, Leiter caused the Plan to make a loan for $60,000 to Beacon ("Beacon Loan 1").

30. On December 31, 2007, Leiter, on behalf of Beacon, executed a promissory note captioned "Certificate of Preferred Senior 8% Note" to the Plan. Pursuant to the promissory note the Plan loaned $60,000 of Plan assets to Beacon.

31. Under the terms of Beacon Loan 1, Beacon would pay the Plan an 8% annual interest rate, with all unpaid principal and interest due on December 31, 2010.

32. In 2008, Beacon made an interest payment of $4,800 to the Plan. Leiter never demanded any further payment of principal or interest for Beacon Loan 1.

33. On January 1, 2010, Leiter caused the Plan to refinance the Beacon Loan 1 with a new loan ("Beacon Loan 2").

34. On January 1, 2010, Leiter, on behalf of Beacon, executed a promissory note captioned "Certificate of Preferred Senior 6% Note" to the Plan. Pursuant to the promissory note Beacon owed the Plan $60,000, which represented the unpaid principal on the Beacon Loan 1.

35. Under the terms of Beacon Loan 2, Beacon would pay the Plan a 6% annual interest rate, with all unpaid principal and interest due on January 1, 2013.

36. Neither of the notes were secured. Also none of the promissory notes received by the Plan contained an amortization schedule.

37. Beacon never made any payment of principal or interest to the Plan on Beacon Loan 2. Leiter never demanded any payment of principal or interest on Beacon Loan 2.

38. On January 1, 2013, Leiter caused the Plan to refinance Beacon Loan 2 with a new loan ("Beacon Loan 3").

39. On January 1, 2013, Leiter, on behalf of Beacon, executed a promissory note captioned "Certificate of Preferred Senior 4% Note" to the Plan. Pursuant to the promissory note Beacon owed the Plan $70,800, which represented the unpaid principal and interest on the Beacon Loan 2.

40. Under the terms of Beacon Loan 3, Beacon would pay the Plan a 4% annual interest rate, with all unpaid principal and interest due on January 1, 2016.

41. Beacon never made any payment of principal or interest to the Plan on Beacon Loan 3. Leiter never demanded any payment of principal or interest on Beacon Loan 3.

42. As alleged in paragraphs 27 through 39 above, Defendant Leiter:

    a. failed to act solely in the interest of the participants and beneficiaries of the Plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of the Plan's administration, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

    b. failed to discharge his duties with the requisite care, skill, prudence, and diligence, in violation of ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B);

    c. caused the Plan to engage in transactions which he knew or should have known constituted a direct or indirect lending of money or other extension of credit between the Plan and a party in interest, in violation of ERISA §406(a)(1)(B), 29 U.S.C. §1106(a)(1)(B);

    d. caused the Plan to engage in transactions which he knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the Plan, in violation of ERISA §406(a)(1)(D), 29 U.S.C. §1106(a)(1)(D);

    e. dealt with assets of the Plan in his own interest in violation of ERISA §406(b)(1), 29 U.S.C. §1106(b)(1); and

    f. acted on behalf of a party whose interests are adverse to the interests of the Plan or the interests of their participants and beneficiaries, in violation of ERISA §406(b)(2), 29 U.S.C. §1106(b)(2).

43. Pursuant to the Plan document the Leiter Group, as the Plan Administrator, was obligated to monitor Leiter, the Plan trustee's, performance. In failing to monitor Leiter's performance the Leiter Group failed to act solely in the interest of the participants and beneficiaries of the Plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of the Plan's administration when it

allowed Leiter to engage in the activities set forth in paragraphs 28 through 41 above, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A).

44. Defendant the Leiter Group is individually liable, pursuant to ERISA §405(a)(2); 29 U.S.C. §1105(a)(2), for the breaches of fiduciary responsibility by a co-fiduciary, as described in paragraphs 28 through 41 above, because by failing to comply with ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A) in the administration of its specific responsibilities which gave rise to its individual status as a fiduciary of the Plan, it enabled its co-fiduciaries to commit the ERISA violations described in paragraph 42.

45. As a direct and proximate result of Defendants Leiter and the Leiter Group's fiduciary breaches, the Plan suffered injury and losses for which they are personally liable and are subject to appropriate equitable relief, pursuant to ERISA §409, 29 U.S.C. §1109.

## COUNT THREE
### (Investment in HDM)

46. Paragraphs 1 through 7 and 10 above are realleged and incorporated herein by reference.

47. Leiter formed HDM in order to build a residential condominium project in Charlotte County, Florida.

48. From approximately January 1, 2003 through December 31, 2003, Leiter caused the Plan to invest, through several monthly payments, a total of $225,000 in the Beacon Florida Waterfront Residential Fund, LLC ("Fund").

49. The Fund was created to engage in the investment and development of real estate, including HDM. The Fund Operating Agreement was executed by Leiter, both as the Fund's Manager and President, and Beacon's Manager and President.

50. The Plan's investment in the Fund translated into an investment in 4.5 Investment Units in HDM.  Each unit was designed to pay a return of 20% on the invested capital annually.

51. As a result of the Plan's 2003 investment, on December 1, 2003, the Plan received a Certificate of Membership and Capital Contribution evidencing a $225,000 investment in HDM.

52. To date the Plan has received no return on its investment in HDM.

53. At no time has Leiter obtained a valuation to determine the value of the Plan's investment in HDM.

54. From the time of the initial investment to the present Leiter has identified the value of the Plan's investment in HDM as $225,000.

55. Leiter never took any action to recover any return on the Plan's investment in HDM.

56. Leiter failed to compare the Plan's investment in HDM with any other investment benchmark.

57. Leiter failed to use any method to determine whether the Plan's continued holding of the HDM investment was prudent.

58. Leiter has continued to maintain the Plan's investment in HDM although HDM has failed to provide any returns to the Plan.

59. As alleged in paragraphs 52 through  58 above, Defendant Leiter failed to discharge his duties with the requisite care, skill, prudence, and diligence, in violation of ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B).

60. Pursuant to the Plan document the Leiter Group, as the Plan Administrator, was obligated to monitor Leiter, the Plan trustee's, performance.  In failing to monitor Leiter's

performance the Leiter Group failed to act solely in the interest of the participants and beneficiaries of the Plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of the Plan's administration when it allowed Leiter to engage in the activities set forth in paragraphs 46 through 57 above, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A).

61. Defendant the Leiter Group is individually liable, pursuant to ERISA §405(a)(2); 29 U.S.C. §1105(a)(2), for the breaches of fiduciary responsibility by a co-fiduciary, as described in paragraphs 52 through 59 above, because by failing to comply with ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A) in the administration of its specific responsibilities which gave rise to its individual status as a fiduciary of the Plan, it enabled its co-fiduciaries to commit the ERISA violations described in paragraph 59.

62. As a direct and proximate result of Defendants Leiter and the Leiter Group's fiduciary breaches, the Plan suffered injury and losses for which they are personally liable and are subject to appropriate equitable relief, pursuant to ERISA §409, 29 U.S.C. §1109.

## COUNT FOUR
### (Diversification of Assets)

63. Paragraphs 1 through 9, 12 through 23, 29 through 41, and 47 through 58 above are realleged and incorporated herein by reference.

64.

    a. On January 1, 2010, the Plan held the following individual investments::

| Investment | Amount Allocated | Percentage of Total Investment |
|---|---|---|
| HDM | $225,000 | 55.2% |

| | | |
|---|---|---|
| Beacon Loans | $60,000 | 14.7% |
| Trust Loans | $122,000 | 30% |

Upon information and belief, at no time in 2010 did Leiter examine the prudence of continuing to keep the Plan's investments in these three, and only these three, assets. On January 1, 2010, Leiter chose to refinance the Beacon Loan although Beacon had not made required payments on the original loan.

    b.    On January 1, 2011, the Plan held the following individual investments:

| Investment | Amount Allocated | Percentage of Total Investment |
|---|---|---|
| HDM | $225,000 | 55.6% |
| Beacon Loans | $60,000 | 14.8% |
| Trust Loans | $119,800 | 29.6% |

Upon information and belief, at no time in 2011 or 2012 did Leiter examine the prudence of continuing to keep the Plan's investments in these three, and only these three, assets. On January 1, 2011, Leiter chose to refinance the Trust Loan although neither Trust had made required payments on the original loan.

    c.    In 2012, Leiter made no change to the Plan's investments.

    d.    On January 1, 2013, the Plan held the following individual investments:

| Investment | Amount Allocated | Percentage of Total Investment |
|---|---|---|
| HDM | $225,000 | 54.1% |

| | | |
|---|---|---|
| Beacon Loans | $70,800 | 17% |
| Trust Loans | $119,800 | 28.9% |

Upon information and belief, at no time in 2013 did Leiter examine the prudence of continuing to keep the Plan's investments in these three, and only these three, assets. On January 1, 2013, Leiter chose to refinance the Beacon Loan Beacon had not made required payments on the original loan.

  e. On January 1, 2014, the Plan held the following individual investments:

| Investment | Amount Allocated | Percentage of Total Investment |
|---|---|---|
| HDM | $225,000 | 52.3% |
| Beacon Loans | $70,800 | 16.5% |
| Trust Loans | $134,265 | 31.2% |

Upon information and belief, at no time in 2014 or 2015 did Leiter examine the prudence of continuing to keep the Plan's investments in these three, and only these three, assets. On January 1, 2014, Leiter chose to refinance the loan to Main-Flora although it had not made required payments on the original loan.

  f. In 2015, Leiter made no change to the Plan's investments.

 65. As the sole trustee of the Trust and the President and Managing Member of Beacon, the Fund, and HDM, Defendant Leiter controlled the Apollo Trust, Main-Flora Trust, Beacon, and HDM, thereby fully controlling and managing the direction of the Plan's underlying investments.

66. All of the Plan's investments were used to further Leiter's personal interests.

67. Upon information and belief, at no time from 2010 through 2015 did Leiter consider the prudence of limiting the Plan's investments to one illiquid investment and two risky loans to entities he controlled.

68. Upon information and belief, Leiter never considered the purpose of the Plan, the amount of the Plan's asests, the financial and industrial conditions, the types of investment vehicles, the distribution as to geographical location, the distribution as to industries, the maturity dates of the investments, or the time horizon over which the Plan will be required to pay out benfits.

69. Upon information and belief, Leiter never compared any Plan investment to any other investment benchmark.

70. From 2003 forward the only return the Plan received was a $4,800 interest payment by Beacon in 2008.

71. Based on the facts set forth in paragraphs 63 through 71 above, defendant Leiter failed to diversify the Plan's assets to minimize the risk of large losses, in violation of ERISA §404(a)(1)(C), 29 U.S.C. §1104(a)(1)(C).

72. Pursuant to the Plan document the Leiter Group, as the Plan Administrator, was obligated to monitor Leiter, the Plan trustee's, performance. In failing to monitor Leiter's performance the Leiter Group failed to act solely in the interest of the participants and beneficiaries of the Plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of the Plan's administration when it allowed Leiter to engage in the activities set forth in paragraphs 63 through 71 above, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A).

73. Defendant the Leiter Group is individually liable, pursuant to ERISA §405(a)(2); 29 U.S.C. §1105(a)(2), for the breaches of fiduciary responsibility by a co-fiduciary, as described in paragraphs 63 through 72 above, because by failing to comply with ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A) in the administration of its specific responsibilities which gave rise to its individual status as a fiduciary of the Plan, it enabled its co-fiduciaries to commit the ERISA violations described in paragraphs 72.

74. As a direct and proximate result of Defendants Leiter and the Leiter Group's fiduciary breaches, the Plan suffered injury and losses for which they are personally liable and are subject to appropriate equitable relief, pursuant to ERISA §409, 29 U.S.C. §1109.

## **PRAYER FOR RELIEF**

WHEREFORE, the Secretary prays for judgment:

A. Permanently enjoining Defendants Leiter and the Leiter Group from violating the provisions of Title I of ERISA;

B. Ordering Defendants Leiter and the Leiter Group to correct the prohibited transactions in which Defendant Leiter engaged;

C. Ordering Defendants Leiter and the Leiter Group to divest the Plan's investment in HDM;

D. Ordering Defendants Leiter and the Leiter Group to make good to the Plan all losses, including interest, resulting from fiduciary breaches committed by them or for which they are liable;

E. Requiring Defendants Leiter and the Leiter Group to disgorge all ill-gotten gains resulting from their violations of Title I of ERISA.

F. Removing Defendants Leiter and the Leiter Group from their positions as fiduciaries with respect to the Plan;

G. Permanently enjoining defendants Leiter and the Leiter Group from serving as fiduciaries or service providers to ERISA-covered plans;

H. Appointing an independent fiduciary to administer the Plan;

I. Ordering Defendants Leiter and the Leiter Group to pay all reasonable fees and expenses incurred by the independent fiduciary in administering the Plan;

J. Awarding the Secretary the costs of this action; and

K. Ordering such further relief as is appropriate and just.

**M. PATRICIA SMITH**
Solicitor of Labor

**CHRISTINE Z. HERI**
Regional Solicitor

s/Ruben R. Chapa
**RUBEN R. CHAPA**

Attorneys for Thomas E. Perez, Secretary of Labor, United States Department of Labor, Plaintiff
Office of the Solicitor
U.S. Department of Labor
230 South Dearborn Street
Eighth Floor
Chicago, Illinois 60604
Telephone: (312) 353-6993 Fax: (312) 353-5698
Email: chapa.ruben@dol.gov