IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| THOMAS E. PEREZ,<br>    Plaintiff,<br><br>v.<br><br>THOMAS E. LEITER, *et al.*,<br>    Defendants. | Case No. 1:16-cv-01116-JES-JEH |

## ORDER

Before the Court are the Plaintiff's Motion for Partial Summary Judgment (D. 18)[1] and Supporting Memorandum thereto (D. 19), the Defendants' Response (D. 27), and the Plaintiff's Reply (D. 28). For the reasons stated, *infra*, the Plaintiff's Motion for Partial Summary Judgment is GRANTED in part, DENIED in part, and the Court RESERVES RULING in part.

## BACKGROUND

The Plaintiff, Thomas E. Perez, the Secretary of the United States Department of Labor,[2] brought this action pursuant to Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001, *et seq.*, ERISA § 502(a)(2) and (5), 29 U.S.C. § 1132(a)(2) and (5). (D. 1). The Secretary seeks to enjoin the Defendants, Thomas E. Leiter and The Leiter Group Attorneys and Counselors Professional Corporation ("The Leiter Group"), from "acts and practices which violate the provisions of Title I of ERISA, to obtain appropriate equitable relief for breaches of fiduciary duty under ERISA § 409, 29 U.S.C. § 1109, and to obtain such further equitable relief" as appropriate to redress and enforce the provisions of Title I of ERISA.

---

[1] Citations to the Docket in this case are abbreviated as "D. __."
[2] The Court takes judicial notice that R. Alexander Acosta is the current United States Secretary of Labor. He is automatically substituted in as the proper party. Fed. R. Civ. P. 25(d).

*Id*. at pg. 1. The Plan at issue—a defined contribution profit sharing plan governed by ERISA—is also a named Defendant, pursuant to Federal Rule of Civil Procedure 19(a), to ensure complete relief can be granted. The undisputed facts demonstrate the following:

The Leiter Group is an Illinois professional corporation providing legal services. Leiter is the president, secretary, and sole owner of The Leiter Group. The Leiter Group established the Plan, restating it in 2009 under an adoption agreement. Leiter signed the adoption agreement as a representative of The Leiter Group and as the Plan's appointed trustee. The Leiter Group has been the only administrator of the Plan during its existence, making Leiter the sole fiduciary of the Plan. Leiter made all of the investment decisions for the Plan. Leiter concedes that he had the discretion to agree to the terms of all of the loans discussed below, as the discretionary trustee of the Plan.

On August 12, 1998, Leiter created the Main-Flora Land Trust ("Main-Flora Trust") and appointed himself as trustee. (D. 19-7 at pg. 2). He had 100% of the beneficial interest in the trust. *Id*. The Main-Flora Trust's only asset is a commercial building located at 427 Main Street, Peoria, Illinois. On January 1, 2010, Leiter assigned his wife, Barbara K. Leiter, 50% of his beneficial interest in the Main-Flora Trust. (D. 19-8 at pg. 2).

On April 8, 2002, Leiter created Beacon Properties, LLC ("Beacon"), a Florida limited liability company, to develop, own, and sell real estate. Leiter is the managing member and president of Beacon, receiving 100% of its profits. Beacon's sole asset is a 50% interest in Hacienda del Mar, LLC ("HDM"), another Florida limited liability company. Leiter is the president and manager of HDM, receiving 100% of its profits. Beacon's and HDM's principal offices are both located at 309-A Main Street, Peoria, Illinois.

At all times relevant to this action, Leiter valued the Plan's investments at their book value. (D. 19-3 at pg. 48). He does not believe he ever considered valuing the investments in any other

manner. *Id*. at pg. 50. Leiter admitted, however, that he knew it was possible to calculate the value of investments by including their increase and/or loss in value. *Id*. at pp. 50-52.

### A. MAIN-FLORA TRUST LOANS

On January 10, 2010, at the direction of Leiter, the Plan made a $122,000.00 loan to the Main-Flora Trust, which was accidentally recorded as going to the Apollo Building Trust. (D. 19-13 at pg. 2); (D. 19-14 at pg. 2). Under the terms of the Apollo loan, Leiter agreed that the Main-Flora Trust would pay the Plan the principal sum at an annual percentage rate of four percent interest, payable by January 10, 2013. (D. 19-13 at pg. 2). By 2011, the Main-Flora Trust paid the Plan $4,480.00 in interest and $2,120.00 toward the principal, resulting in a principal loan balance of $119,880.00. (D. 19-14 at pg. 2).

Leiter executed another promissory note to the Plan, loaning the Main-Flora Trust $119,880.00 on January 1, 2011. (D. 19-15 at pg. 2). He agreed that the Main-Flora Trust would pay the Plan the principal sum, along with an annual percentage rate of four percent interest, this time payable by January 1, 2014. *Id*. On January 1, 2014, Leiter loaned the Main-Flora Trust $134,265.60 from the Plan. (D. 19-16 at pg. 2). The 2014 Main-Flora Trust loan represented his calculation of the unpaid principal and interest rolled over from the 2011 Main-Flora Trust loan. (D. 19 at pg. 9); (D. 27 at pg. 3). Once again, he agreed that the Main-Flora Trust would pay the Plan the principal sum with an annual percentage rate of four percent interest. (D. 19-16 at pg. 2). Leiter further promised an annual principal payment of $5,000.00. *Id*. The entire balance was due in full by January 1, 2017. Under the terms of the 2014 Main-Flora Trust loan, if the Main-Flora Trust defaulted on a scheduled payment, the Plan had the option to collect the entire unpaid balance, along with accrued interest, immediately. (D. 19-16 at pg. 2). Leiter admits that he chose the interest rate because it was beneficial to the Main-Flora Trust and that he did not consult with

3

any banks to determine what current competitive interest rates were. (D. 19 at pg. 10); (D. 27 at pg. 3).

On January 1, 2017, after the filing of the instant suit, Leiter executed another promissory note from the Main-Flora Trust to the Plan. (D. 19-17 at pg. 2). This loan was for $233,855.00 and was an explicit renewal of the 2011 Main-Flora Trust loan, including "accrued interest and advances[.]" *Id*. Leiter agreed that the Main-Flora Trust would pay the Plan an annual percentage rate of four percent interest, along with a lump sum payment upon maturity by January 1, 2020.

### B. BEACON LOANS

On December 31, 2007, Leiter directed the Plan to loan Beacon $60,000.00 at an annual percentage interest rate of eight percent. (D. 19-18 at pg. 2). All principal and interest was due on December 31, 2010 and the loan balance could be paid early without penalty. *Id*. Leiter was the only person with authority to enter into agreements on behalf of Beacon. (D. 19 at pg. 11); (D. 27 at pg. 3). He testified that he paid the Plan, on behalf of Beacon, an interest payment of $4,800.00. (D. 19-3 at pg. 30).

On January 1, 2010, Leiter had the Plan loan Beacon $60,000.00 at an annual percentage interest rate of six percent. (D. 19-19 at pg. 2). Like the 2007 Beacon loan, all principal and interest was due exactly three years later (on January 1, 2013) and the loan balance could be paid off early without penalty. *Id*. Leiter testified that his decision to lower the interest rate on the 2010 Beacon loan was based on "market conditions." (D. 19-3 at pg. 34). He never demanded payment for the 2010 Beacon loan on behalf of the Plan. (D. 19 at pg. 12); (D. 27 at pg. 3).

On January 1, 2013, Leiter rolled the 2010 Beacon loan into another loan. (D. 19-20). The 2013 Beacon loan from the Plan was for $70,800.00 and had an annual percentage interest rate of four percent. *Id*. at pg. 2. The principal balance represented the balance and accrued interest from

4

the 2010 Beacon loan, and was due, along with its accrued interest, by January 1, 2016 with no penalty for early payment. *Id*.; (D. 19-3 at pg. 36). Leiter based his decision to lower the interest rate on "current market conditions." (D. 19-20 at pg. 37). Beacon did not pay the loan by January 1, 2016 and the Plan did not request that Beacon pay the balance it was owed. *Id*. at pg. 38.

### C. HDM LOANS

Beacon created a limited liability corporation called the Beacon Properties Florida Waterfront Residential Fund I ("Fund") to invest in an HDM project ("Project"). (D. 19-21 at pg. 4). HDM's Project was a real estate condominium development in Placida, Florida. *Id*. HDM owned the Project and Beacon developed it. *Id*. The Fund planned to "invest in 20% Preferred Equity Investment Units issued by" HDM and Beacon, which were to be paid for "from distributable cash from earnings of the Project in preference to returns to the members of" HDM and Beacon. *Id*. The Fund had approximately ten members, one of which was the Plan. (D. 19-3 at pg. 40). Each of the Investment Units were "designed to pay a return of 20% annually on the invested capital payable as a preferred distribution from" HDM. (D. 19-22 at pg. 2). The Fund was also "an investor in [HDM] holding the entire preferred equity which entitles it to a 20% return on invested capital which return must be paid in preference to distributions to the common equity holders." *Id*. at pg. 3.

At Leiter's direction, the Plan invested $225,000 in the Fund on December 1, 2003, giving it 4.5 investment units. (D. 19-23 at pg. 2). By 2013 or 2014, Leiter realized "there wasn't going to be a return[]" on the Plan's investment in the Fund. (D. 19-3 at pp. 41-42). The Plan never attempted to sell its interest in the Fund. *Id*. at pg. 43. According to Leiter, the value of HDM lowered over time. (D. 19 at pg. 14); (D. 27 at pg. 3). By failing to admit or deny in response to

5

what the Plaintiff asserted was an undisputed material fact, pursuant to Local Rule 7.1(D)(2)(b)(6), the Defendants admitted that:

> Years after the Plan's investment in the Fund (and therefore, in HDM), Bank of America, which had a mortgage on the property owned by HDM, agreed to sell its mortgage for one-third its value. As a result of the sale[,] Bank of America agreed to release Leiter from a personal guarantee on a $30 million obligation relating to HDM.

(D. 19 at pg. 14) (citations omitted); (D. 27 at pp. 3-5); (D. 28 at pg. 7).

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court reviews the facts in a light most favorable to the non-movants, in this instance, the Defendants. *Vodak v. City of Chicago*, 639 F.3d 738, 740 (7th Cir. 2011). The moving party—here, the Plaintiff—has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323-24. Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he "must do more than simply show that there is some metaphysical

doubt as to the material fact." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 256-57 (1986) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 818 (7th Cir. 1999). Undeveloped and unsupported arguments are waived. *Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1002 n.1 (7th Cir. 2001). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to successfully oppose a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 250.

## ANALYSIS

The Plaintiff's Complaint contains four counts against the Defendants, each alleging multiple ERISA violations: Count I, for the loans to the Main-Flora Trust; Count II, for the loans to Beacon; Count III, for the investment in HDM; and Count IV, for failing to diversify the Plan's assets. (D. 1 at pp. 3-15). "In order to prevail on a claim for breach of fiduciary duty under ERISA, a plaintiff must prove (1) that defendants are plan fiduciaries; (2) that defendants breached their fiduciary duties; and (3) that their breach caused harm to the plaintiffs." *Kannapien v. Quaker Oats Co.*, 507 F. 3d 629, 639 (7th Cir. 2007). The Plaintiff brings this action to address violations arising under: ERISA § 406(a) and (b), 29 U.S.C. § 1106(a) and (b); and ERISA 404 (a)(1)(A) and (B), 29 U.S.C. 1104(a)(1)(A) and (B). (D. 19 at pp. 16-17). In their Response, the Defendants fail to cite legal authority. (D. 27). Rather, they support their assertions with attached documentation, relying largely on an affidavit submitted by Leiter himself. *Id*. at pp. 10-24.

Specifically, the Defendants assert that "[p]art of the relief sought [by the Plaintiff] is not in dispute and the remaining part requires a factual determination which prevents entry of summary judgment." *Id*. at pg. 1. The Defendants concede that they were the fiduciaries of the Plan,[3] but

---

[3] Trustees of a plan, by virtue of their position, are automatically considered fiduciaries of the plan. 29 C.F.R. § 2509.75-8 at D-3.

7

argue it is disputable whether they breached their fiduciary duties. *Id.* at pg. 2. In their estimation, "[t]he sole remaining factual issue [before the Court] is whether the investments were made for the purpose of benefiting the participants." *Id.*

## A. ERISA § 406, 29 U.S.C. § 1106

First, the Plaintiff argues Leiter breached his fiduciary duties, in violation of ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B); ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D); and ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2). (D. 19 at pp. 21-25). Specifically, the Plaintiff asserts that he breached his fiduciary duty by loaning the Plan's assets to the Main-Flora Trust and Beacon, parties in interest. (D. 19 at pp. 21-24). As mentioned above, the Defendants dispute this point by claiming that it is a factual issue involving the determination of whether or not the investments at issue were made for the purpose of benefiting the Plan. (D. 27 at pg. 2). They do not dispute that the Main-Flora Trust and Beacon are parties in interest.

Congress enacted ERISA § 406(a)(1), "categorically barring" transactions between a plan and a party of interest. *Harris and Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 241-42 (2000). It specifically prohibits: direct or indirect transactions between plans and parties in interest (§ 406 (a)(1), 29 U.S.C. § 1106(a)(1)); fiduciaries from causing a plan to engage in a direct or indirect lending of money or other extension of credit between a plan and a party in interest (§ 406(a)(1)(A), 29 U.S.C. § 1006(a)(1)(B)); and fiduciaries from permitting plan assets to be used by or transferred to a party in interest (§ 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D)). "The *per se* nature of the § 406 prohibitions cuts against the need-to-show harm to the plan[;]" it is effectively a "blanket prohibition[]" on the transactions it expressly prohibits, without regard to the involvement of bad faith or the potential reasonableness of the transaction. *Chao v. Linder*, 2007 WL 1655254, at *8 (N.D. Ill. 2007). Further, § 406(b) "supplements the party-in-interest

8

prohibitions of section 406(a) by prohibiting any fiduciary from acting in a situation in which he has a personal interest which may conflict with the interest of the plan for which he acts." *Freund v. Marshall & Ilsley Bank*, 485 F. Supp. 629, 637 (W.D. Wisc. 1979).

As a matter of law, the loans Leiter made to the Main-Flora Trust and Beacon were prohibited by: ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B); ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D); and ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2). By loaning the Plan's assets to the Main-Flora Trust and Beacon—undisputed parties in interest—Leiter *per se* breached his fiduciary duties to the Plan. Thus, the Plaintiff's Motion for Partial Summary Judgment on Leiter's breaches of §§ 406(a)(1)(B), 406(a)(1)(D), and 406(b)(2) is GRANTED.

### B. ERISA § 404, 29 U.S.C. § 1104

Next, the Plaintiff argues the Defendants engaged in a variety of ERISA § 404, 29 U.S.C. § 1104 violations. (D. 19 at pp. 25-32). More precisely, the Plaintiff claims that: (1) Leiter breached his fiduciary duty under ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A) by failing to act solely in the interest of the Plan participants when loaning the Plan's assets to the Main-Flora Trust and Beacon (*Id*. at pp. 25-26); (2) under ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), the Plan's continued investment in HDM was unlawful (*Id*. at pp. 26-27); and (3) Leiter breached his fiduciary duty under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) by failing to properly investigate the loans he issued on behalf of the Plan to the Main-Flora Trust and Beacon, and failing to monitor the investment in HDM (*Id*. at pp. 27-32). Relevant to these arguments, the Defendants assert that since Leiter is a participant in the Plan, it would be illogical for him to be disloyal to himself while investing the Plan's assets. (D. 27 at pg. 6). They concede that the investment in HDM and the Fund was not prudent in hindsight, but argue it was reasonable when Leiter made the decision. *Id*. at pp. 6-8.

The duty of loyalty under ERISA § 404(a)(1)(A) requires fiduciaries to act "with an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F. 2d 263, 271 (2d Cir. 1982). In situations that pose "substantial conflicts of interest," a fiduciary's duty of loyalty may require them to avoid the situation altogether. *Leigh v. Engle*, 727 F. 2d 113, 125-26 (7th Cir. 1984). "Where it might be possible to question the fiduciaries' loyalty, they are obligated *at a minimum* to engage in an intensive and scrupulous independent investigation of their options to ensure that they act in the best interests of the plan beneficiaries." *Id*. (emphasis added). "Good faith is not a defense to an ERISA fiduciary's breach of the duty of loyalty." *Id*. at pg. 124.

Leiter breached his fiduciary duty under ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A) by failing to act solely in the interest of the Plan's participants. That he himself is one of the Plan's beneficiaries, does not immunize him from his fiduciary obligations as the Plan's trustee. As previously discussed, loaning the Plan's assets to the Main-Flora Trust and Beacon were violations of Leiter's established fiduciary duties. As a matter of law, such actions cannot be considered adherence to the applicable standard of complete loyalty.

Additionally, the Plan's continued investment in HDM was unlawful under ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A). Leiter readily admits he was aware that the Plan's investment in HDM was losing value by 2014. As the Plaintiff highlights, however, rather than attempt to contain the losses stemming from the Plan's investment in HDM, he found a buyer to purchase the HDM mortgage at a substantial discount, releasing himself from a 30 million dollar guarantee in the process. (D. 19 at pg. 14); (D. 27 at pp. 3-5); (D. 28 at pg. 7). The record does not indicate he attempted to do anything comparable to hedge the Plan's losses on this investment, in spite of the fact that he recognized its declining value. Therefore, the Plaintiff's Motions for Partial Summary Judgment on Leiter's breach of § 404(a)(1)(A) is GRANTED.

Under ERISA § 404(a)(1)(B), fiduciaries further have a duty to act in good faith as an objectively prudent fiduciary would act, not as a prudent layperson would act. *Eyler v. C.I.R.*, 88 F. 3d 445, 454 (7th Cir. 1996). This requires the fiduciary "to undertake a vigorous and independent investigation into the wisdom of the contemplated investment" in order to comply with § 404(a)(1)(B)'s standards. *Leigh*, 727 F. 2d at 124 (citing *Donovan*, 680 F. 2d 263).

The Plaintiff alleges that Leiter inadequately investigated whether he should have directed the Plan to make the loans to the Main-Flora Trust and Beacon and breached his fiduciary duty by failing to collect on them when they were due. (D. 19 at pg. 29). The Plaintiff further asserts that he failed to assess whether the Plan's continued investment in HDM was prudent. *Id*. at pg. 31. As mentioned above, Leiter does not claim that he monitored the Plan's investment in HDM. Instead, he emphasizes that his investment in HDM was not prohibited and was prudent at the time. (D. 27 at pp. 6-7). Leiter also argues that his loans to the Main-Flora Trust and Beacon were made to benefit the Plan. *Id*. at pp. 7-8.

Viewing the facts in a light most favorable to the Defendants, the Court assumes Leiter's investment in HDM was prudent when he initially made it and that the loans to the Main-Flora Trust and Beacon were intended to benefit the Plan. Regardless, Leiter partially breached his fiduciary duty under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B). The record demonstrates that he failed to monitor the investment in HDM. Leiter did, at least arguably, however, properly investigate and monitor the loans he issued to the Main-Flora Trust and Beacon.

Noting that the real estate market was in decline starting in 2008, as the Defendants do here, is not a sufficient basis for the Court to conclude that Leiter undertook a vigorous, independent investigation into the wisdom of the Plan's continued investment in HDM. Leiter implies that he was monitoring the situation by noting the investment's decline in value over time.

11

Crucially, he fails to state a rationale for why he retained it, as opposed to finding a way to mitigate the Plan's losses. Alluding to such a strategy could, arguably, lead to a finding that he fulfilled his duty to monitor or alter the investment in the face of its declining value. See, *e.g. Jenkins v. Yager*, 444 F. 3d 916, 925 (7th Cir. 2006). He makes no such argument.

In contrast, the record reveals that he curbed his personal losses by selling HDM's mortgage at a third of its original value and took no similar action on behalf of the Plan, to the Plan's detriment. Accordingly, the Court concludes that Leiter breached his fiduciary obligation under § 404(a)(1)(B) to monitor the Plan's investment in HDM and the Plaintiff is entitled to summary judgment on the issue.

The Court cannot conclude, however, that Leiter breached ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) in neglecting to vigorously and independently investigate and monitor the loans he issued to the Main-Flora Trust and Beacon. The central evidence of such a breach is his issuance of loans to parties in interest——a violation of his fiduciary duty that has already been established. Leiter may have further breached his fiduciary duties in this regard. His candid testimony regarding the way he administered the loans suggests it is possible. But Leiter is also a businessman and an attorney with a wealth of experience. He arguably knew interest rates without needing to consult banks. While delaying the collection on loans and continuing to assess assets at their book value are likely not the hallmarks of a prudent fiduciary, the record before the Court is insufficient to establish that the Plaintiff is entitled to summary judgment on this issue.

Rather, whether Leiter is liable for an additional ERISA-imposed fiduciary breach for failing to investigate and monitor the terms of the Main-Flora Trust and Beacon loans is a factual determination that should be left to the trier of fact. After all, Leiter's actions and inactions may also have been the prototypical behavior of an informed, competent fiduciary, depending on the

circumstances. The evidence before the Court does not currently indicate that Leiter undisputedly failed to satisfy his fiduciary obligation of vigorously and independently investigating the loans to the Main-Flora Trust and Beacon before making them. The Court concludes that the Plaintiff is not entitled to summary judgment on this portion of the issue. Thus, the Plaintiff's Motion for Partial Summary Judgment on Leiter's breach of § 404(a)(1)(B) is GRANTED in part and DENIED in part.

The Plaintiff further argues that because The Leiter Group breached its fiduciary duties under ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), it is liable for losses pursuant to ERISA § 405(a)(2), 29 U.S.C. 1105(a)(2). (D. 19 at pp. 32-34). The Defendants do not address this argument in their Response. (D. 27). Appointing fiduciaries have a duty to ensure that the performance of appointed trustees is in compliance with the terms of their plan and ERISA. 29 C.F.R. § 2509.75-8, FR-17. The appointing fiduciary is liable under ERISA § 405(a)(2) for their co-fiduciary's violations of § 404(a). *Sandoval v. Simmons*, 622 F. Supp. 1174, 1216 (C.D. Ill. 1985).

The Leiter Group failed to monitor the administration and investment of the Plan's assets by Leiter. The Leiter Group also imprudently permitted Leiter to continue loaning the Plan's assets to parties in interest, and allowed him to retain the Plan's continued unlawful investment in HDM. A cursory investigation by The Leiter Group would have revealed these facts. The Leiter Group is therefore liable under ERISA § 405(a)(2) for Leiter's violations of § 404(a)(1)(A). As such, the Plaintiff's Motion for Partial Summary Judgment on the issue of The Leiter Group's liability by way of § 405(a)(2) is GRANTED.

## C. ERISA § 502, 29 U.S.C. § 1132 and ERISA § 409, 29 U.S.C. § 1109

The Court notes again that in order to succeed on their claim, the Plaintiff is required to establish that Leiter's breach harmed the Plan. *Kannapien v. Quaker Oats Co.*, 507 F. 3d 629, 639 (7th Cir. 2007). The Plaintiff argues that the Plan is entitled to a total of $678,769.89. (D. 19 at pp. 15; 35). In making this claim, they cite to a declaration completed by a supervisory investigator from the Office of the Employee Benefits Security Administration. *Id.*; (D. 19-25). The Defendants dispute this declaration by arguing that the "Plan has not suffered any loss as a result of the allegations in the complaint." (D. 27 at pg. 4).

As stated by the Plaintiff, there is a minor discrepancy as to the exact amount of the damage to the Plan. The Plaintiff seeks $678,769.89 in total losses (D. 19 at pp. 15; 35), with supporting documentation that proclaims it is entitled to $678,742.58 in total losses (D. 19-25 at pp. 3-4). Therefore, the Plaintiff must SUBMIT a revised accounting with supporting arguments as to the losses it seeks from the Defendants. The Plaintiff's revised accounting and briefing is due by May 31, 2018, and the Defendant will be given 14 days to respond. The parties are encouraged to address which specific Plan participants suffered losses in their respective arguments regarding the damage done to the Plan.

The Plaintiff's remaining arguments are that the Defendants should pay prejudgment interest on the losses to the Plan that resulted from their ERISA violations (D. 19 at pg. 35), and that the Court should: (1) remove the Defendants as fiduciaries of the Plan (*Id.* at pp. 36-37); (2) enjoin them from further becoming fiduciaries to any ERISA-covered plans (*Id.*), and (3) appoint an independent fiduciary to the Plan (*Id.* at pg. 37).

The Court notes, however, that the Plaintiff's Motion for Partial Summary Judgment also contains a request for leave to file an amended complaint. (D. 19 at pg. 22, fn. 2). The Plaintiff

seeks to include allegations regarding the Defendants' involvement in the 2017 Main-Flora Trust loan, which occurred well after the filing of the original complaint. (D. 19 at pg. 22). As previously discussed in this Order, the loan at issue has already been addressed by the parties in their respective pleadings. Allegations regarding the 2017 Main-Flora Trust loan, however, must be included in the Plaintiff's Complaint. The Defendants have already responded to the allegations regarding the loan and therefore cannot be prejudiced by its inclusion in a supplement to the Plaintiff's Complaint. Accordingly, the Plaintiff is hereby permitted to file a SUPPLEMENT to its Complaint, pursuant to Federal Rule of Civil Procedure 15(d). This supplement is strictly for the purpose of incorporating allegations pertaining to the Defendants' involvement in the 2017 Main-Flora Trust loan.

In light of the Plaintiff's need to supplement their Complaint, the Plaintiff's requirement to submit a revised accounting and briefing as to damages, and the Defendants' pending response to the Plaintiff's argument for damages, the Court RESERVES RULING on the remainder of the issues raised by the Plaintiff. After the Plaintiff files its Supplement and the Court receives a briefing by both parties on the issue of damages to the Plan, the Court will address: (1) the Plaintiff's requests for the Defendants to restore losses to the Plan, including prejudgment interest; (2) the Plaintiff's request to remove the Defendants as fiduciaries of the Plan and enjoin them from further serving as fiduciaries to any ERISA-covered plans; and (3) whether the Court will appoint a succeeding independent fiduciary.

In summary, viewing the facts and circumstances in a light most favorable to the Defendants, there are no genuine issues of material fact in dispute on the Defendants' breach of their fiduciary duties under ERISA §§ 406(a)(1)(B), 406(a)(1)(D), 406(b)(2), 404(a)(1)(A), and 405(a)(2), as raised by the Plaintiff. A reasonable fact-finder could only find in the Plaintiff's

favor on these issues. The Plaintiff is also entitled to partial summary judgment on the issues raised regarding Leiter's breach of § 404(a)(1)(B). To be clear, portions of all four of the counts in the Plaintiff's Complaint remain contested in the wake of the Court's ruling. For clarity, summary judgment is specifically GRANTED for the following paragraphs from the Plaintiff's Complaint: Count I paragraphs 24a, 24c, 24d, 24f, 25, and 26; Count II paragraphs 42a, 42c, 42d, 42f, 43, and 44; Count III paragraphs 59, 60, and 61; and Count IV paragraphs 72 and 73. Summary judgment is DENIED for paragraph 24b of Count I and paragraph 42b of Count II. Remaining to be addressed by the Court are: paragraphs 24e and 27 of Count I; paragraphs 42e and 45 of Count II, paragraph 62 of Count III, and paragraphs 71 and 74 of Count IV.

Lastly, the Court is aware that the parties have attempted to settle this case. It is likely that a Magistrate Judge can further assist them in this endeavor. Pursuant to Local Rule 16.1, the case is referred to Magistrate Judge Hawley for a settlement conference on all remaining issues. The Clerk will notify the Magistrate Judge's chambers, his chambers will in turn contact the parties.

## CONCLUSION

Viewing the evidence of record in a light most favorable to the Defendants, the Plaintiff's Motion for Partial Summary Judgment (D. 18) is GRANTED in part, DENIED in part, and the Court RESERVES RULING in part. The Plaintiff is directed to file a SUPPLEMENT to its Complaint solely for the purpose of incorporating allegations regarding the Defendants' involvement in the 2017 Main-Flora Trust loan. The Plaintiff is further directed to SUBMIT a revised accounting of the losses to the Plan that it seeks from the Defendants with additional briefing, as it deems appropriate, to assess damage and losses to the Plan. The Defendants shall have an opportunity to respond. The Supplement and the revised accounting shall both be filed by the Plaintiff no later than May 31, 2018.

*It is so ordered.*

Entered on May 16, 2018

s/ James E. Shadid

James E. Shadid

Chief U.S. District Judge